UNITED STATES of America

v.

Patrick McDONALD, Appellant.

UNITED STATES of America

v.

Michael POLLARD, Appellant.

Nos. 88–3103, 88–3104.

United States Court of Appeals, District of Columbia Circuit.

Argued May 9, 1989.

Decided June 9, 1989.

Michele A. Roberts, with whom John Perazich, Washington, D.C., was on the brief, for appellant in No. 88–3103.

Robert Dowlut (appointed by the court for appellant) in No. 88–3104.

Michael L. Volkov, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell and Judith E. Retchin, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MIKVA, EDWARDS and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellants Patrick McDonald and Michael Pollard were jointly charged with possession with intent to distribute in excess of fifty grams of cocaine base ("crack") and with possession with intent to distribute in excess of fifty grams of cocaine powder, see 21 U.S.C. § 841(a), (b)(1)(A)(iii) & (b)(1)(C) (1982 & Supp. V 1987), employment of a person under eighteen years of age to violate the narcotics laws, see id. § 845b, use of a firearm during the commission of a drug trafficking crime, 18 U.S.C. § 924(c) (1982 & Supp. V 1987), and seven counts of possession of an unregistered firearm, see D.C.Code Ann. § 6–2311(a) (1981). McDonald was convicted of all counts but the charge of use of a firearm during the commission of a drug trafficking crime. Pollard was convicted on both counts of possession with intent to distribute and acquitted on all of the other counts. The two were sentenced pursuant to the United States Sentencing Commission Guidelines, see 18 U.S.C. §§ 3551–86 (Supp. V 1987), 28 U.S.C. §§ 991–98 (Supp. V 1987) (hereinafter "Guidelines"), with McDonald receiving 292–month long sentences on each narcotics count as well as the count for employing a juvenile, and four-to-twelve months for each firearm count. He was to serve all of his sentences concurrently. Pollard received two 210–month long sentences to be served concurrently. The district judge used her discretion under the Guidelines in adjusting McDonald's "level" upward in light of the "aggravating role" he had played in the commission of the crimes. See Guidelines at 3B1.1(b). Defendants appeal their convictions.

While we agree with the trial court that there was ample evidence to support Pollard and McDonald's convictions for possession with intent to distribute narcotics, as well as McDonald's convictions for the possession of unregistered firearms,[1] we are not persuaded that the government has presented sufficient evidence for a reasonable jury to conclude, beyond a reasonable doubt, that McDonald used a juvenile to

---

1. In that connection, both Pollard and McDonald raise a series of objections, none of which we think meritorious.

sell narcotics. *See United States v. Campbell,* 684 F.2d 141, 145 (D.C.Cir.1982).

In order to convict McDonald under 21 U.S.C. § 845b(a)(1) of hiring a juvenile to violate the law, the government must show that, he *"knowingly and intentionally*—[ ] employ[ed], hire[d], use[d], persuade[d], induce[d], entice[d], or coerce[d], a person under eighteen years of age to violate"* the law prohibiting distribution and possession of controlled substances. 21 U.S.C. § 845b(a)(1) (Supp. V 1987). Yet all that the government was able to adduce at trial suggesting that McDonald used the juvenile in question—Patrick Pinkney—to sell drugs, was that a gold ring with the name "Patrick"[2] on it was found on the table where the drugs were packaged, and that when the police came Pinkney ran away, and that when caught Pinkney had $198 in cash. This evidence, taken together, at best shows that Pinkney was present and able to observe the narcotics at 642 Morton Place—the "stash house." Although a reasonable jury might have concluded Pinkney was involved in selling narcotics, no evidence whatsoever was introduced indicating that McDonald used Pinkney to assist him in his own violations of the drug laws. Even though we view the evidence, as we must, in a light most favorable to the government, *see Campbell* at 145, we are unable to conclude that the government has carried its burden with respect to McDonald's use of Pinkney to violate the narcotics laws.

The government argues that its expert testimony by Detective Charles DiDomenico explaining the structure and operation of narcotic hierarchies was sufficient to lead a reasonable jury to the conclusion, beyond a reasonable doubt, that McDonald used Pinkney. We disagree; the government seeks to use an expert witness beyond his probative value. *Compare United States v. Dunn,* 846 F.2d 761, 764 (D.C. Cir.1988) (expert testimony combined with other evidence sufficient for reasonable jury to find defendant guilty of drug distribution). DiDomenico described a typical drug operation in which a supplier, operating from a stash house where the drugs are packaged, passes the packages of drugs to a street lieutenant who, in turn, disburses them to several street salesmen. Evidence offered at trial only indicates that McDonald filled the supplier's role at 642 Morton Place. But even if there was sufficient evidence to show that Pinkney was involved in the drug operation, the conviction of McDonald for using Pinkney was based on speculation, as the jury was never presented with evidence showing that McDonald *knowingly* was responsible for any "use" of Pinkney. A reasonable jury could not conclude beyond a reasonable doubt, from McDonald's role as supplier alone, that McDonald was knowledgeable of all operations at the house and therefore used Pinkney within the meaning of the statute.

Accordingly, we reverse McDonald's conviction for using a minor. Notwithstanding the concurrent sentences, we remand for reconsideration of McDonald's sentence because it appears from the record that Judge Green may have relied upon McDonald's conviction for employing a minor when she determined that McDonald's sentence should be bumped up three offense levels because of his aggravating role as a manager or supervisor. *See* Guidelines at 3B1.1(b). This court expresses no opinion as to whether, despite reversing McDonald's conviction on this one count, the Judge should find it appropriate to increase McDonald's offense as directed by the Guidelines at 3B1.1.

Accordingly, the district court judgment is

*Affirmed in part and reversed in part.*

---

2. McDonald and Pinkney share the same first name. The police did not determine whose ring it was although there was testimony that Patrick Pinkney, but not Patrick McDonald, wore a gold ring with "Patrick" inscribed on it.